IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANAND N. MUNSIF | : | CIVIL ACTION |
| | : | |
| v. | : | No. 11-5949 |
| | : | |
| AMERICAN BOARD OF | : | |
| INTERNAL MEDICINE, et al. | : | |

## MEMORANDUM

**Juan R. Sánchez, J.**                                                      **September 11, 2012**

Pro se Plaintiff Dr. Anand N. Munsif brings claims against the American Board of Internal

Medicine (ABIM), the New Jersey Division of Law (the Law Division), the New Jersey Division of

Consumer Affairs (the Consumer Affairs Division), the University of Medicine and Dentistry of

New Jersey (the University), and the New Jersey Board of Medical Examiners (the Board of Medical

Examiners)[1] arising out of an investigation of Dr. Munsif undertaken by the Law Division, the

Consumer Affairs Division, and the Board of Medical Examiners, based on information from ABIM,

which resulted in the suspension of Munsif's medical license.  Munsif alleges Defendants have

violated his rights under the United States, New Jersey, and Pennsylvania Constitutions.  He also

brings claims against Defendants for fraud, "special damage," gross negligence, and conspiracy, and

for violations of the Racketeer Influenced and Corrupt Practices Act (RICO), several federal anti-

discrimination statutes, the federal antitrust laws, the Illinois, New Jersey, and Pennsylvania

whistleblower statutes, the Pennsylvania Medical Practice Act of 1985, § 45:1-18 of the New Jersey

Statutes, and the United Nations Universal Declaration of Human Rights.  ABIM and the New Jersey

Defendants have each filed a motion to dismiss Munsif's Amended Complaint.  For the reasons set

forth below, the motions will be granted.

---

[1] The New Jersey entities are collectively referred to herein as the "New Jersey Defendants."

**FACTS**[2]

Dr. Munsif attended medical school outside of the United States and then sought additional training in New Jersey, where he currently resides.  Munsif alleges the State of New Jersey has a history of discriminating against graduates of foreign medical schools.  According to the Amended Complaint, such discrimination is based on race because foreign medical graduates are predominantly non-white, while graduates of medical schools in the United States are predominantly white.  Munsif appears to contend the State's discriminatory practices, which he claims ABIM has tolerated since the 1980s, have impeded his medical career and prevented him from obtaining satisfactory medical employment in New Jersey.

_____

[2] The following factual summary is based primarily on the allegations in Dr. Munsif's 69-page Amended Complaint, which this Court must accept as true in evaluating the instant motions to dismiss.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Because Munsif's claims relate to the investigation of him undertaken by the Board of Medical Examiners, and because the course of that investigation is not clear from the Amended Complaint, this Court has also considered two orders issued by the Board in connection with the investigation insofar as they shed light on the procedural history of the investigation.  Specifically, the Court has considered (1) the Board's November 12, 2010, order requiring Munsif to submit to a psychological evaluation and skills assessment as a condition for continued licensure, and (2) the Board's November 7, 2011, order suspending Munsif's medical license.  The Court may properly consider these orders at the motion to dismiss stage both because they are judicially noticeable and because they are integral to Munsif's Amended Complaint. *See S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426-27 & n.7 (3d Cir. 1999) (holding the existence of prior proceedings is judicially noticeable); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (holding a district court ruling on a motion to dismiss may consider a document on which the plaintiff's claims are based, even if the document is not attached to the complaint or cited therein).  While Munsif does not refer directly to the November 2010 order, much of his Amended Complaint consists of his objections to the requirements imposed therein.  And while the November 2011 suspension order was not issued until after the Amended Complaint was filed, the order was entered nunc pro tunc to July 13, 2011, the date the Board heard oral argument on the motion that led to the suspension, at which time the Board apparently ruled orally on the motion. *See* State Defs.' Opp'n to Pl.'s Mot. for Restraining Order 2, ECF No. 28.  Moreover, the suspension order represents the culmination of the administrative proceedings that are the basis of many of Munsif's claims against the New Jersey Defendants.

With regard to the State's discriminatory practices, Dr. Munsif alleges that during the mid-1980s, the State increased the training period required to obtain a physician's license from one to three years for foreign medical graduates, but not for graduates of American medical schools. Am. Compl. 6. In addition to being humiliating, this change allegedly harmed the career prospects of foreign-educated doctors by delaying their access to better training programs, reducing their income from moonlighting, and delaying their eligibility to take the Federal Licensing Examination, a prerequisite for physician licensure in New Jersey. According to the Amended Complaint, other states do not differentiate between foreign- and American-educated doctors in this manner.

During the 1987–1988 academic year when Dr. Munsif was applying for a training position in the field of cardiovascular disease, the State-owned hospitals and medical schools in New Jersey excluded foreign medical graduates from their cardiovascular disease residency programs by either omitting them from the national computerized matching program or ranking them very low. As a result, foreign medical graduates, including Munsif, had to obtain cardiovascular disease training outside of New Jersey. Munsif alleges ABIM, by virtue of its role in verifying the training of candidates for board certification in internal medicine and its subspecialties, including cardiovascular disease, either knew or should have known of New Jersey's racial bias in the cardiovascular disease training matching program, but did nothing to remedy the State's unethical and illegal practice.[3]

Between 1995 and 1997, a period of financial stress for New Jersey medical practices due to problems with reimbursements from insurers, the Law Division, the Consumer Affairs Division, and the Board of Medical Examiners granted medical licenses to several physicians who had not

---

[3] Munsif also alleges the State maintained racially discriminatory policies with respect to the specialty of psychiatry, in which he trained from 1984 to 1986.

completed internship and residency training in the United States, and who were considered "fellows." The grant of physician licenses to these fellows, several of whom worked in the practice where Dr. Munsif was employed at the time, was a departure from the usual requirement of internship and residency training and allegedly resulted in preventable deaths and lapses in patient care at a hospital in Passaic, New Jersey. Munsif brought these preventable deaths to the attention of the Director of Consumer Affairs in late 1997 or early 1998 and asked him to investigate. Munsif thereafter lost his job, which he attributes to the State's practice of licensing fellows who earned about 60 percent less than he did and were thus cheaper for the practice. He also alleges his complaints about preventable deaths at the Passaic hospital may have caused hospital personnel to say negative things about him and may have caused other New Jersey hospitals not to grant him hospital privileges.

Nearly ten years later, on June 1, 2007, Dr. Munsif took the recertification examination in internal medicine administered by ABIM, but experienced numerous problems in doing so. Initially, ABIM withdrew Munsif's registration for the exam. Although ABIM eventually reinstated the registration in May 2007, it then reversed course, informing Munsif only one to two hours before the exam was to begin on June 1 that his registration was revoked without giving a reason. When Munsif protested, ABIM permitted him to take the exam a few hours later; however, the distraction ABIM had created caused him to fail the exam. Munsif appears to believe the distraction was an intentional effort to cause him to fail. Munsif also notes several deficiencies in the examination facility, including the lack of comfortable chairs and the lack of availability of snacks and beverages on-site, causing examinees to have to walk three blocks uphill in 85-degree weather for a cup of tea or coffee. After Munsif failed the recertification exam, ABIM required him to wait several months

4

before retaking the exam and failed to provide him with any assurance a similar situation would not arise in the future or to offer improved examination facilities.

In September 2007, Dr. Munsif filed a lawsuit against six ABIM officers asserting numerous claims arising out of ABIM's alleged mishandling of his exam registration and role in causing him to fail the exam as well as the poor conditions at the examination facility.  This Court dismissed the suit in January 2008, and the Third Circuit affirmed the dismissal.  *See Munsif v. Cassel*, 331 F. App'x 954 (3d Cir. 2009).[4]

In 2007 or early 2008, ABIM complained to the Law Division that Dr. Munsif was paranoid and exhibited illogical thinking and irrational behavior, complaints Munsif contends were baseless. As a result of ABIM's complaints, the Law Division commenced an investigation of Munsif in February 2008, which culminated in the suspension of Munsif's medical license, effective July 13, 2011.

In September 2010, as part of the investigation, the New Jersey Attorney General filed a motion with the Board of Medical Examiners seeking to require Dr. Munsif to submit to a psychological evaluation and a skills assessment.  Bd. of Med. Exam'rs Order 1, Nov. 12, 2010, ECF No. 20-2.[5]  In support of the motion, the Attorney General submitted an expert report by Ricardo J.

_____

[4] This Court may take judicial notice of the existence of Dr. Munsif's prior federal court action and the decisions rendered therein in evaluating the Defendants' motions to dismiss.  *See S. Cross Overseas Agencies*, 181 F.3d at 426-27 & n.7.

[5] It appears Munsif had declined earlier requests by the Law Division and/or the Board of Medical Examiners that he submit to a skills assessment, allegedly because the Law Division required him to obtain an approval letter from hospitals with low procedure success rates (i.e., under 96 percent) or from hospitals that would not verify their success rates, rather than accepting his work experience at hospitals with high success rates.  *See* Am. Compl. 18; Bd. of Med. Exam'rs Order 5, Nov. 12, 2010.

Fernandez, M.D., a psychiatrist, who did not interview Munsif but reviewed documents Munsif submitted to the Board and in support of his prior federal lawsuit against the ABIM officers.  Dr. Fernandez opined there was good cause to require Munsif to submit to a psychological evaluation based on the paranoid thinking exhibited in the documents he reviewed.  Munsif submitted a pro se response to the Attorney General's motion.[6]

Following oral argument in October 2010, the Board issued an order on November 12, 2010, directing Munsif, as a condition for continued licensure, to (1) "submit within ninety (90) days to a psychological evaluation by a psychiatrist, pre-approved by the Board, in order for the Board to evaluate whether his continued practice of medicine may jeopardize the safety and welfare of the public," and (2) "submit within 90 days to an assessment of skills in Internal Medicine and Clinical Cardiac Electrophysiology by an entity pre-approved by the Board to determine whether he can continue to practice with reasonable skill and safety."[7]  *Id.* at 15-16.  The order also alerted Munsif if he "fail[ed] to satisfy the conditions of this Order within the specified time frame, the Board reserve[d] the right to initiate proceedings it deem[ed] necessary to protect the public."  *Id.* at 16.

When Munsif thereafter failed to comply with the requirements of the November 2010 order,

_____

[6] Although Dr. Munsif had been represented by counsel at an earlier stage of the investigation, he was no longer represented by counsel after June 2010.  Bd. of Med. Exam'rs Order 1 n.2, Nov. 12, 2010; *see also id.* at 3 (noting Munsif had appeared with counsel before a Preliminary Evaluation Committee of the Board in November 2008 to answer questions).

[7] The Board concluded a psychological evaluation was necessary based on Dr. Fernandez's report as well as its own review of the record, including Dr. Munsif's submissions in his lawsuit against ABIM's officers.  *Id.* at 11-14.  The Board found there was a need for an assessment of Munsif's skills based on the length of time he had been out of practice and the changes in his chosen field during the time he had been out of practice, among other factors.  *Id.* at 14-15.  In reaching this conclusion, the Board found Munsif had more likely than not ceased practicing medicine in 1997 or 1999 at the latest, *id.* at 14, a conclusion Munsif disputes in this case, as discussed below.

6

the Attorney General filed a further motion with the Board, seeking a finding that Dr. Munsif's failure to comply constituted professional misconduct and the imposition of sanctions on Munsif for such misconduct.  Bd. of Med. Exam'rs Order 1-2, Nov. 7, 2011, ECF No. 20-2.  The Board held oral argument on the motion on July 13, 2011, and on November 7, 2011, the Board issued a written order suspending Munsif's medical license, nunc pro tunc to July 13, 2011.  *Id.* at 11.  The Order specified the suspension would remain in effect pending Munsif's submission to, and the Board's review of the results of, the required psychological evaluation and skills assessment.  *Id.*

Dr. Munsif makes numerous complaints about the conduct of the investigation described above, many of which he also appears to have raised before the Board of Medical Examiners. Munsif alleges the investigation was unnecessarily protracted and has harmed him by preventing him from earning a living, interfering with his prior federal court case and appeal, damaging his reputation, and causing him intellectual property losses.  He further alleges that by depriving him of income during the pendency of the investigation, Defendants have prevented him from paying his existing medical bills for his cancer and diabetes treatment, and from obtaining further needed medical care for these and other issues.  Munsif also alleges there was no basis for the Board of Medical Examiners to require him to submit to a psychological evaluation or a skills assessment, and challenges the Law Division's failure to maintain the confidentiality of the investigation, which he contends caused him millions of dollars in unspecified intellectual property losses and ruined his reputation.[8]

----

[8] In addition to his complaints about the investigation itself, Munsif alleges the University delayed in providing him a letter verifying his postgraduate training in 2008, which prevented him from participating in a refresher training program for which he had registered at a cost of $1,000.  While the University routinely produces such verification letters in 10 days, it took 45 days to produce a verification letter for Munsif.  Munsif alleges that had he been able to participate in the refresher

As to the skills assessment, Dr. Munsif alleges the Attorney General has refused to agree to a workable solution by failing to respond to Munsif's offer to submit to a skills assessment at Cooper University Hospital or his request for indemnification in the event he is forced to interact with a hospital with low procedure success rates. *Id.* at 19.  He also alleges the New Jersey Defendants have failed to recognize his non-working status is the direct result of the State's own actions. *Id.* at 23-24.   Specifically, Munsif asserts that as a result of the State's racial preferences in its cardiovascular disease residency program, he was forced to obtain his medical training outside of New Jersey and ended up receiving better training than was offered in New Jersey, making him effectively unemployable in New Jersey until community cardiac electrophysiologists in the state reached the same high procedure success rates as other states. *Id.* at 23-24, 27-28.  Munsif also alleges his non-working status is the result of the New Jersey Defendants' grant of medical licenses to non-U.S.-trained "fellows" who were hired by Munsif's medical practice in the mid-1990s, causing him to lose his job. *Id.* at 24.  He also appears to allege the Board's investigation, based on ABIM's false claim of paranoia, has effectively restrained him from competing while white physicians in New Jersey improve their procedure success rates. *See id.* at 20, 24.  Munsif further alleges because of his superior training, if he submits to a skills assessment at a lower success rate hospital, he will make many professional enemies because he would look better than most clinical cardiac electrophysiologists. *Id.* at 24-25.

As to the psychological evaluation, Dr. Munsif alleges Dr. Fernandez improperly diagnosed him as paranoid without even speaking to him and in the absence of any satisfactory criteria as described in the *Diagnosis and Statistical Manual of Psychiatric Disorders IV*. *Id.* at 19.  He also

training program, the investigation would have been moot.  Am. Compl. 18.

identifies several inaccuracies in Fernandez's report.  *See id.* at 30-32.  For example, Munsif alleges Fernandez incorrectly concluded that Munsif had not practiced medicine since 1997, notwithstanding that Munsif's non-working status was the result of actions by ABIM and the State of New Jersey, and despite the fact Munsif had advised the Board he engaged in the practice of medicine in October 2008 by "reviv[ing] an unresponsive, pulse less woman in a nursing home and ha[ving] her transferred to hospital."  *Id.* at 30-31.  Munsif also disputes Fernandez's evaluation of Munsif's federal court filings, noting Fernandez failed to mention ABIM's counsel's representation to this Court that he could re-take the recertification exam, which statement would not have been made if ABIM had any doubts about Munsif.  *Id.* at 31.

Munsif also alleges ABIM and the Law Division are seeking to discredit him because he is the author of the book, *Diabetes Mellitus Handbook*, which discusses health problems of Native Americans and African Americans, two groups with which ABIM and the Law Division have a "very sorry record."  *Id.* at 26.  He further contends the Law Division and ABIM have demanded that he work in "ghetto" hospitals with lower pay, less prestige, and a higher risk of physical violence, which "fulfills all criteria for slavery."  *Id.* at 26-27.

Munsif filed his original Complaint in this action in September 2011, and filed an Amended Complaint the following month, asserting against all Defendants claims for fraud, "special damage," gross negligence, conspiracy, and RICO violations, and for violations of his rights under the United States, New Jersey, and Pennsylvania Constitutions; several federal anti-discrimination statutes; the federal antitrust laws; the Illinois, New Jersey, and Pennsylvania whistleblower statutes; the Pennsylvania Medical Practice Act of 1985; § 45:1-18 of the New Jersey Statutes; and the United Nations Universal Declaration of Human Rights.  ABIM and the New Jersey Defendants thereafter

9

separately moved to dismiss the Amended Complaint, and this Court held oral argument on the motions in March 2012.

In April 2012, approximately one month after the oral argument, Munsif filed a Second Amended Complaint, which reiterates the facts and legal claims in Munsif's Amended Complaint, expands certain factual allegations, adds various legal claims, and presents new legal argument in opposition to Defendants' motions to dismiss. ABIM thereafter moved to strike this Second Amended Complaint. In May 2012, Munsif filed what is in effect a motion for leave to file the previously filed Second Amended Complaint,[9] which the New Jersey Defendants have opposed.

Because Munsif had already amended his Complaint once before filing his Second Amended Complaint, and because he filed the Second Amended Complaint five months after Defendants filed their dismissal motions pursuant to Federal Rule of Civil Procedure 12(b), he was required to seek Defendants' permission or this Court's leave before amending his Complaint a second time. *See* Fed. R. Civ. P. 15(a) (providing a party may amend its complaint once as a matter of course within 21 days after serving it or after service of a Rule 12(b) motion, but otherwise may amend only with the opposing party's written consent or the court's leave). Although Munsif did not comply with Rule 15(a) initially, he eventually filed the equivalent of a motion for leave to amend. *See* ECF No. 44. Accordingly, this Court will grant ABIM's motion to strike Munsif's Second Amended

---

[9] In his motion, Munsif requested leave (1) to add a table identifying the factual allegations relevant to each of his legal claims, (2) to expand his allegations regarding jurisdiction and venue, and (3) to add or expand facts and claims. *See* ECF No. 44. However, the documents Munsif sought leave to file comprise the Second Amended Complaint. *Compare* ECF No. 39 (Second Am. Compl.) *with* ECF No. 44 (motion to add and expand, indicating motion "is in lieu of Amended [C]omplaint with Table – court document 39"). For ease of reference, and because Munsif's motion for leave to amend seeks to amend the Amended Complaint in three separate documents, citations to Munsif's proposed Second Amended Complaint will be to the verison of the complaint docketed at ECF No. 39.

Complaint, which was improperly filed without permission or leave, and will consider Munsif's motion for leave to amend along with Defendants' motions to dismiss.  To the extent the Second Amended Complaint constitutes a response to the pending motions to dismiss, the Court will consider the arguments raised therein in addressing Defendants' arguments for dismissal.  To the extent the Second Amended Complaint includes new factual allegations and legal claims, the Court will consider the sufficiency of the pleading in addressing Munsif's request for leave to amend.  This Court recognizes that under Rule 15(a), leave to amend should be "freely give[n] . . . when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Leave to amend need not be granted, however, where amendment would be futile in that the pleading, as amended, "would fail to state a claim upon which relief could be granted."  *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175 (3d Cir. 2010) (internal quotation marks and citation omitted).

**DISCUSSION**

### A.  <u>The New Jersey Defendants</u>

The New Jersey Defendants ask this Court to dismiss Munsif's Amended Complaint on numerous grounds, including for lack of personal jurisdiction.  *See* Fed. R. Civ. P. 12(b)(2).  To defeat such a motion, a plaintiff must demonstrate facts establishing that personal jurisdiction exists. *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009); *see also Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 94, 97 (3d Cir. 2004).  Where, as here, the district court does not hold an evidentiary hearing, to satisfy this burden, the plaintiff must "establish a prima facie case of personal jurisdiction and . . . is entitled to have [his] allegations taken as true and all factual disputes drawn in [his] favor."  *Miller Yacht Sales*, 384 F.3d at 97.

A federal court sitting in Pennsylvania "has jurisdiction over parties to the extent provided

under [Pennsylvania] state law." *Id.* at 96; *see also* Fed. R. Civ. P. 4(k)(1)(A).  The Pennsylvania long-arm statute authorizes the exercise of personal jurisdiction "to the fullest extent allowed under the Constitution of the United States."  42 Pa. Cons. Stat. Ann. § 5322(b).  Therefore, to decide whether personal jurisdiction exists, this Court must determine whether the New Jersey Defendants "ha[ve] 'certain minimum contacts with . . . [Pennsylvania] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"  *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 316 (3d Cir. 2007) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Personal jurisdiction may be exercised under two distinct theories:  general jurisdiction and specific jurisdiction.  A court may exercise general jurisdiction over a defendant "to hear any and all claims against [it] when [its] affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State."  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011).  "Specific jurisdiction over a defendant exists when that defendant has 'purposefully directed [its] activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities.'"  *Miller Yacht Sales*, 384 F.3d at 96 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal quotation marks and citations omitted)).

In his Amended Complaint, Munsif alleges the New Jersey Defendants are subject to personal jurisdiction in Pennsylvania because they "are all within [a] 100 mile radius of Philadelphia, Pennsylvania [and] conduct intrastate and interstate business within and from the State of New Jersey which is part of the Third Circuit federal court system."  Am. Compl. 2.  Munsif attempts to amplify his jurisdictional allegations in his proposed Second Amended Complaint, alleging

12

jurisdiction is proper in Pennsylvania based on the New Jersey Defendants' transaction of business in this Commonwealth.  Specifically, Munsif alleges the New Jersey Defendants regularly contact ABIM in Philadelphia "several dozen times per year for certificate and credential verification," and regularly verify the licensure of New Jersey doctors who also maintain practices in Pennsylvania. Second Am. Compl. 18.  He also relies on his own payment of fees to ABIM to maintain Board certification or eligibility, on which the New Jersey Defendants rely in granting hospital privileges, and on the fact the New Jersey Defendants investigated him based on a complaint initiated by ABIM in Philadelphia.  *Id.* at 17-18.  Even these expanded allegations, however, are insufficient to establish a basis for general or specific jurisdiction.

With respect to general jurisdiction, Munsif does not allege the New Jersey Defendants—three New Jersey governmental entities and a state university—have any physical presence in Pennsylvania, such as an office or employees.  Rather, the only conduct Munsif identifies by the New Jersey Defendants in Pennsylvania consists of communications with ABIM—and possibly the Pennsylvania licensing authority—to verify the credentials of New Jersey doctors.  Such allegations fall far short of suggesting the kind of continuous and systematic contacts with a forum necessary to support general jurisdiction.  *See Goodyear*, 131 S. Ct. at 2856-57 (holding the fact that a small percentage of a foreign company's tires were distributed in North Carolina by affiliates was not enough to subject the company to general jurisdiction in North Carolina); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416-18 (1984) (holding "mere purchases" of helicopters, equipment, and training services in Texas, "even if occurring at regular intervals, [we]re not enough to warrant [the] State's assertion of in personam jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions"); *Boone v. Thompson*, No.

13

02-1580, 2002 WL 31478834, at *4-5 (E.D. Pa. Nov. 1, 2002) (holding a county social service agency in New Jersey was not subject to general jurisdiction in Pennsylvania where the agency had contact with public agencies and clients in Pennsylvania from time to time but had no office or employees in Pennsylvania).

Nor are these contacts sufficient to establish specific jurisdiction over the New Jersey Defendants in this case.  For specific jurisdiction to exist, the plaintiff's claims must "arise out of or relate to" at least one activity by which the defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum."  *O'Connor*, 496 F.3d at 317-18 (citations omitted).  Although the defendant's activities in the forum state need not have been the proximate cause of the plaintiff's injuries, there must be a "meaningful link . . . between a legal obligation that arose in the forum and the substance of the plaintiff[']s] claims."  *Id.* at 324.  Here, Munsif's claims against the New Jersey Defendants do not arise out of any efforts by these Defendants to verify his credentials with ABIM or any other entity in Pennsylvania, but out of their acts and failures to act in New Jersey, including their discriminatory practices with respect to licensing and training doctors in New Jersey, their delay in providing Munsif with a letter verifying his postgraduate training, and their investigation of Munsif.  *See Boone*, 2002 WL 31478834, at *5 (finding no basis for specific jurisdiction over a New Jersey county social service agency in Pennsylvania where none of the events leading the plaintiff's cause of action had any connection to Pennsylvania).  The remaining contacts Munsif identifies—the New Jersey Defendants' reliance on Board certification (which doctors must pay ABIM to maintain) in conferring hospital privileges and receipt of a complaint about Munsif from ABIM—likewise do not support the existence of specific jurisdiction because these contacts do not reflect any "deliberate targeting" of Pennsylvania by the New Jersey

Defendants.  *See O'Connor*, 496 F.3d at 317 (noting "the 'unilateral activity of those who claim some relationship with a nonresident defendant' is insufficient [for specific jurisdiction]" (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958))).

In his proposed Second Amended Complaint, Munsif also invokes the so-called "100-mile bulge" provision of Federal Rule of Civil Procedure 4(k)(1)(B), noting the New Jersey Defendants have offices and conduct meetings in Trenton and Camden, both of which are within 100 miles of Philadelphia.  Second Am. Compl. 19.  Under Rule 4(k)(1)(B), "[s]erving a summons or filing a waiver of service establishes personal jurisdiction over a defendant . . . who is a party joined under Rule 14 or 19 and is served within a judicial district of the United States and not more than 100 miles from where the summons was issued."  By its terms, this provision applies only to parties joined as third-party defendants pursuant to Rule 14 or as necessary or indispensable parties pursuant to Rule 19.  It does not provide an independent basis for personal jurisdiction over a defendant named in the plaintiff's original complaint and is therefore inapplicable here.  *See Prince of Peace Enter., Inc. v. Top Quality Food Mkt., LLC*, No. 07-349, 2007 WL 704171, at *2 (S.D.N.Y. Mar. 7, 2007) (holding "a plaintiff may not use the bulge provision [of Rule 4(k)(1)(B)] to obtain service on an original defendant"); *Thompson v. Martin*, No. 88-2335, 1988 WL 68722, at *1 (E.D. Pa. June 27, 1988) (holding Rule 4(k)(1)(B) (formerly Rule 4(f)) "provides for an additional 100 mile territorial 'bulge' for service upon parties brought in under Rule 14 or joined as additional parties under Rule 19," but finding the Rule "irrelevant" to service of named defendant).

Finally, Munsif argues the New Jersey Defendants are subject to personal jurisdiction in Pennsylvania based on the RICO statute's authorization of nationwide service of process.  *See* Second Am. Compl. 19.  Although the Third Circuit has not addressed the issue, courts of appeals

15

for several other circuits have held RICO's service of process provision, 18 U.S.C. § 1965, permits a court to exercise personal jurisdiction over nonresident defendants based on nationwide service of process, at least where personal jurisdiction can be established as to one defendant.  *See Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1230-31 (10th Cir. 2006) (collecting cases).[10]  Because there is no question this Court may exercise personal jurisdiction over ABIM, this Court arguably has personal jurisdiction over the New Jersey Defendants as to Munsif's RICO claim and, possibly, as to his other claims insofar as they arise out of the same nucleus of operative fact.  *See Robinson v. Penn Cent. Co.*, 484 F.2d 553, 555-56 (3d Cir. 1973) (holding a district court exercising personal jurisdiction over a defendant based on extraterritorial service authorized by the federal securities laws could exercise pendent personal jurisdiction as to state claims); *see also United States v. Botefuhr*, 309 F.3d 1263, 1272-73 (10th Cir. 2002) (noting every circuit court of appeals to address the issue "ha[s] upheld the application of pendent personal jurisdiction," under which a district court having personal jurisdiction over a defendant for one claim "may 'piggyback' onto that claim other claims over which it lacks independent personal jurisdiction, provided that all the claims arise from the same facts as the claim over which it has proper personal jurisdiction").  As set forth below, however, both Munsif's Amended Complaint and his proposed Second Amended Complaint fail to allege a plausible RICO claim against the New Jersey Defendants (and ABIM), and his RICO claim

---

[10] The circuits are split as to which provision of § 1965 authorizes nationwide service of process. Courts of appeals in four circuits (the Second, Seventh, Ninth, and Tenth) have interpreted § 1965(b) to permit nationwide service, "if required by the ends of justice," so long as personal jurisdiction can be established as to at least one defendant. *See id.* (describing circuit split).  Courts of appeals in two other circuits (the Fourth and Eleventh) have held § 1965(d) provides for nationwide service of process without regard to whether any defendant is independently subject to personal jurisdiction. *See id.*  Because this Court concludes Munsif has failed to allege a plausible RICO claim against the New Jersey Defendants, making the exercise of personal jurisdiction as to the New Jersey Defendants inappropriate, the Court need not address which subsection of § 1965 would apply here.

must therefore be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

Because Munsif's RICO claim against the New Jersey Defendants is legally insufficient, it is

questionable whether this claim can be the basis for personal jurisdiction over these Defendants as

to Munsif's remaining claims, as to which personal jurisdiction otherwise would not exist.  Even

assuming this Court could exercise pendent personal jurisdiction in these circumstances, however,

the Court finds it would be inappropriate to do so, given the legal insufficiency of Munsif's RICO

claim.  *See id.* at 1274 (holding a district court abused its discretion by retaining jurisdiction over a

federal claim as to which it did not possess personal jurisdiction over defendants after dismissing

the lone federal claim as to which personal jurisdiction was proper); *Fetter v. N. Am. Alcohols, Inc.*,

No. 06-4088, 2007 WL 551512, at *10 n.2 (E.D. Pa. Feb. 15, 2007) (holding the exercise of pendent

personal jurisdiction would be inappropriate where the claim as to which the court had personal

jurisdiction was subject to dismissal under Rule 12(b)(6)).  Accordingly, Munsif's RICO claim will

be dismissed for failure to state a claim for the reasons set forth below, and his remaining claims will

be dismissed for lack of personal jurisdiction.

　　　　To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Iqbal*, 129 S. Ct. at 1949 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim

is facially plausible when the facts pleaded "allow[] the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged."  *Id.*  Where, as here, the plaintiff appears pro se,

the court must construe the complaint liberally.  *See Haines v. Kerner*, 404 U.S. 519, 520 (1972)

(recognizing a pro se complaint must be held to "less stringent standards than formal pleadings

drafted by lawyers").

The RICO statute makes it unlawful

- "for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce," 18 U.S.C. § 1962(a);

- "for any person through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce," *id.* § 1962(b);

- "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ," *id.* § 1962(c); and

- "for any person to conspire to violate the provisions of [§ 1962(a), (b), or (c)]," *id.* § 1962(d).

Munsif appears to allege violations of all four subsections.  To state a claim for a violation of any of these provisions, Munsif must allege Defendants engaged in a "pattern of racketeering activity." *Zahl v. N.J. Dep't of Law & Pub. Safety Div. of Consumer Affairs*, 428 F. App'x 205, 211 (3d Cir. 2011); *Banks v. Wolk*, 918 F.2d 418, 421 (3d Cir. 1990).  "Racketeering activity" consists of certain indictable offenses listed in § 1961(1), including mail and wire fraud.  A pattern of racketeering activity requires at least two predicate acts of such activity.  18 U.S.C. § 1961(5).

In his Amended Complaint, Munsif purports to identify a host of predicate acts of racketeering activity by ABIM and, to a lesser extent, the New Jersey Defendants.  As to ABIM, these alleged predicate acts include ABIM's (1) declaring Munsif unsuccessful on an ABIM examination in 1997 or 1998, Am. Compl. 41; (2) notice to the New Jersey state medical licensing board to discipline Munsif in 2003 or 2004, *id.*; (3) conduct with respect to the June 2007

18

recertification examination, including failing to advise Munsif of the status of his check and registration in telephone calls in March and April 2007, revoking and restoring his registration in May 2007 and on the morning of the exam, distracting Munsif just enough to cause him to fail the exam, providing bad examination facilities and exam content, and requiring Munsif to wait several months to retake the exam with no assurance of improved procedures or facilities, *id.* at 39-42; (4) failure to respond to Munsif's request for a federal court administered and graded recertification examination, *id.* at 42; and (5) complaint to the Law Division that Munsif is paranoid and exhibited illogical thinking and irrational behavior, *id.* at 40-43.  These acts are insufficient to establish a pattern of racketeering activity, however, as the Third Circuit has already determined none of them amounts to a crime under federal or state law and they thus do not qualify as predicate acts of racketeering activity. *See Munsif*, 331 F. App'x at 958 & n.6 (holding the following acts did not constitute racketeering activity:  (1) Munsif failing an ABIM exam in 1997 or 1998; (2) "telephone calls occurring in March and April 2007 in which he was *not* told by an ABIM employee about the true status of his registration payment"; (3) "revocation of his registration for the May and June 2007 re-certification exams"; (4) "bad examination content"; (5) "ABIM's notices in 2003 or 2004 and 2007 to the state Disciplinary Board regarding Munsif"[11]; and (6) "ABIM's failure to comply with Munsif's request that he re-take the exam under the District Court's supervision").

---

[11] Although the 2007 notice was sent after Munsif filed his complaint in the earlier federal court action, he cited this notice to the Third Circuit as a predicate act of racketeering by ABIM, and the Third Circuit considered and rejected this argument. *See* ABIM's Mem. in Supp. of Mot. to Dismiss Pl.'s Am. Compl. Ex. C, at 24-25 (Munsif's appellate brief describing ABIM's effort to damage his reputation and ability to earn income by sending a complaint to the state physician licensing board in December 2007 as an act proscribed by RICO); *Munsif*, 331 F. App'x at 958 & n.6 (rejecting the argument that ABIM's 2007 notice to the state disciplinary board was a predicate act of racketeering).

Munsif also suggests ABIM engaged in racketeering by failing to take any action to remedy the system of racial preferences in New Jersey's state-run cardiovascular disease training programs, Am. Compl. 38, and by maintaining a monopoly as the sole (or nearly sole) certifying organization for doctors practicing in the specialty of internal medicine and the subspecialty of cardiovascular disease, and maintaining a quota system by having a preset number of passing candidates, *id.* at 39. Finally, Munsif refers to ABIM's "program of mandatory preexamination study" as "extortion." *Id.* at 45. These allegations, too, are insufficient. Violations of the antitrust and civil rights laws are not predicate acts under RICO. *See St. Clair v. Citizens Fin. Grp.*, 340 F. App'x 62, 66 (3d Cir. 2009); *Jennings v. Emry*, 910 F.2d 1434, 1438 (7th Cir. 1990). While extortion is among the predicate acts listed in § 1961(1), Munsif's allusion to ABIM's "'extortion' program of mandatory preexamination study," Am. Compl. 45, falls far short of alleging extortion by ABIM. *See Rose v. Bartle*, 871 F.2d 331, 362 (3d Cir. 1989) (describing the "generic" offense of extortion as activity "by which 'funds are obtained from the victim with his consent produced by the use of force, fear, or threats'" (quoting *United States v. Nardello*, 393 U.S. 286, 295 (1969))).

In his proposed Second Amended Complaint, Munsif attempts to identify additional predicate acts by ABIM, alleging ABIM committed mail fraud by arranging a hearing in federal court in January 2008, which, unbeknownst to Munsif, was actually a mental competency hearing; mailing letters in 2008 that purported to be court documents but were actually part of the alleged mental competency proceeding; and making unspecified misleading statements in court filings. Second Am. Compl. at 73-74, 88-89. These allegations pertain to Munsif's prior federal court case, in which this

Court held a hearing for the purpose of clarifying Munsif's claims on January 4, 2008.[12]  *See Munsif*,

331 F. App'x at 957 (referencing hearing).  Although a court must generally accept a plaintiff's well-

pleaded factual allegations as true at the motion to dismiss stage, *Iqbal*, 556 U.S. at 679, this

presumption does not apply with respect to allegations "that are sufficiently fantastic to defy reality

as we know it," *id.* at 696 (Souter, J., dissenting).  Munsif's allegations that the hearing held before

this Court in January 2008 was actually a mental competency hearing are contradicted by the record

in Munsif's earlier federal court case, and his allegations that ABIM engaged in racketeering activity

by misrepresenting the "true nature" of the hearing fail for this reason alone.  Moreover, Munsif's

allegations of wire fraud based on unspecified misleading statements in unidentified court documents

fail for the additional reason that these allegations do not plead the circumstances of the alleged fraud

with sufficient particularity.  *See Lum v. Bank of Am.*, 361 F.3d 217, 223-24 (3d Cir. 2004) (holding

racketeering activity consisting of mail and wire fraud must be alleged with particularity under

Federal Rule of Civil Procedure 9(b)).

Munsif's allegations regarding purported predicate acts of racketeering activity by the New

Jersey Defendants fare no better.  In his Amended Complaint, Munsif alleges the University engaged

in racketeering activity by "not listing [Munsif] in the computerized cardiovascular disease matching

program in the 1980s" and by delaying in sending a letter verifying his medical training in 2008.

Am. Compl. 45.  He alleges the remaining New Jersey Defendants committed predicate acts by

increasing the training requirements for physician licensure for foreign medical graduates, permitting

his former medical practice to hire "fellows" (which led to his termination), and "keeping [him] out

---

[12] The Second Amended Complaint refers to a court hearing on January 7, 2008, the date of this Court's Order dismissing Munsif's earlier federal court action; however, the docket indicates the hearing occurred on January 4.

of e[]mployment under various false excuses" while his competitors improved their success rates. *Id.* Because none of this activity constitutes a crime under federal or state law, however, these allegations are likewise insufficient to establish a pattern of racketeering activity.

Nor does Munsif's proposed Second Amended Complaint identify any actual predicate acts of racketeering by the New Jersey Defendants. In addition to the activity included in his Amended Complaint, the Second Amended Complaint alleges the New Jersey Defendants engaged in racketeering activity by conducting a 42-month investigation of Munsif, preventing him from earning a living and from competing with less-skilled white doctors while the investigation was ongoing, mailing him letters purporting to be an inquiry from the Board of Medical Examiners which "were actually mental competency hearings," and sending him for a skills assessment in the lower prestige and less lucrative specialty of internal medicine rather than in clinical cardiac electrophysiology and threatening to suspend his medical license if he did not comply. Second Am. Compl. 74, 90-91. Here again, however, none of these actions amounts to one of the crimes enumerated in § 1961(1); hence, these allegations are not sufficient to infer the New Jersey Defendants engaged in a pattern of racketeering activity.[13]

Because Munsif's Amended Complaint does not allege a pattern of racketeering activity by

---

[13] Munsif suggests the New Jersey Defendants' interference with his ability to earn a living during the pendency of the investigation constitutes attempted murder because his lack of income prevented him from paying his past medical bills and paying for proper follow-up cancer treatment. Second Am. Compl. 74. These allegations, however, do not rise to the level required for an attempted murder charge. Moreover, insofar as Munsif alleges the New Jersey Defendants engaged in mail fraud by sending unspecified letters that falsely purported to be an inquiry by the Board of Medical Examiners, such allegations do not satisfy Rule 9(b) as it is not clear how these unspecified communications were fraudulent. *See Lum*, 361 F.3d at 224 (holding to satisfy Rule 9(b), a plaintiff's allegations must "inject[] precision and some measure of substantiation into [his] allegations of fraud" (citation omitted)).

any of the Defendants, his RICO claim will be dismissed pursuant to Rule 12(b)(6).  Moreover, because Munsif's proposed Second Amended Complaint does not correct this deficiency, leave to amend will be denied as futile.  For the reasons set forth above, even considering the expanded jurisdictional allegations in Munsif's proposed Second Amended Complaint, Munsif has not demonstrated that the New Jersey Defendants are subject to personal jurisdiction in Pennsylvania as to his remaining claims, and even assuming this Court could exercise pendent personal jurisdiction as to these remaining claims in the absence of a plausible RICO claim, the Court finds it would be inappropriate to do so.  Therefore, those claims will be dismissed with prejudice pursuant to Rule 12(b)(2).

      **B.**    <u>**ABIM**</u>

      ABIM argues Munsif's Amended Complaint should be dismissed based on the doctrine of res judicata because Munsif previously litigated the same claims against ABIM's officers in his earlier federal court action and lost.  "Res judicata, also known as claim preclusion, bars a party from initiating a second suit against the same adversary based on the same 'cause of action' as the first suit."  *Duhaney v. Att'y Gen. of the U.S.*, 621 F.3d 340, 347 (3d Cir. 2010).  To prevail on the defense of res judicata, a defendant must establish three elements:  "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action."  *Id.* (quoting *In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008)).

      The first two elements are easily satisfied here.  Munsif's earlier federal court action was dismissed for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), and the Third Circuit affirmed the dismissal; hence, there was a final judgment on the merits in the earlier action.  *See Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 & n.3 (1981)

(recognizing a Rule 12(b)(6) dismissal is a judgment on the merits for res judicata purposes).

Moreover, although Munsif brought his earlier suit against ABIM's officers and now sues ABIM

itself, the defendants in the first action, who appear to have been sued solely in their capacity as

members of ABIM's Executive Committee and as policymakers for ABIM, are privies of ABIM for

res judicata purposes.[14]  *See García Monagas v. De Arellano*, 674 F.3d 45, 53 (1st Cir. 2012) (noting

"the weight of authority is that an individual sued in his or her corporate capacity as an officer or

director of a corporation is in privity with the corporation"); *Friez v. First Am. Bank & Trust of*

*Minot*, 324 F.3d 580, 582 (8th Cir. 2003) (holding officers of a corporation may be in privity with

the corporation if they are sued in their capacity as such); *Waris v. Mackey*, No. 09-1103, 2009 WL

4884204, at *8 (E.D. Pa. Dec. 15, 2009) (holding a corporation and its outside counsel were in

privity with the corporation's board of directors for res judicata purposes).  The question, therefore,

is whether this action against ABIM is based on the same cause of action as the earlier suit.

Whether a lawsuit involves the same cause of action as an earlier suit depends not on the

particular legal claims or legal theory asserted, but on the "essential similarity of the underlying

events giving rise to the various legal claims."  *Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 963

(3d Cir. 1991) (quoting *Davis v. U.S. Steel Supply*, 688 F.2d 166, 171 (3d Cir. 1982) (en banc)).  In

making this determination, a court should focus on "whether the acts complained of were the same,

whether the material facts alleged in each suit were the same, and whether the witnesses and

---

[14] Although the complaint in Munsif's earlier federal court action does not specify the capacity in
which the ABIM officers were sued, it is apparent from the allegations of the complaint that these
defendants were sued as representatives of ABIM.  Later-filed papers in that action confirm the
officers were sued as members of ABIM's Executive Committee who presided over or initiated
various policies that caused harm to Munsif.  *See* ABIM's Mem. in Supp. of Mot. to Dismiss Pl.'s
Am. Compl. Ex. B.

documentation required to prove such allegations were the same." *Id.* (quoting *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 984 (3d Cir. 1984)).  Res judicata operates to bar "not only claims that were brought in the previous action, but also claims that could have been brought." *Elkadrawy v. Vanguard Grp., Inc.*, 584 F.3d 169, 173 (3d Cir. 2009) (quoting *Post v. Hartford Ins. Co.*, 501 F.3d 154, 169 (3d Cir. 2007)).  Thus, the fact that a later-filed suit includes new allegations will not prevent preclusion where the allegations involve issues "fundamentally similar" to those raised in the earlier action.  *See id.* at 173-74.

Applying these standards, it is clear that many of Munsif's claims in this action are based on the same cause of action as his earlier federal lawsuit.  To the extent that Munsif's claims are not barred by res judicata, his allegations are insufficient to state a plausible claim for relief for violations of any of the rights alleged.

Munsif's fraud and gross negligence claims against ABIM are based on ABIM's alleged mishandling of, and alleged misrepresentations during the course of mishandling, Munsif's registration for the June 2007 recertification exam; the resulting distraction which caused Munsif to fail the exam; problems with the examination site and content; and ABIM's failure to assure Munsif these problems would not recur and promulgation of the myth that all candidates are treated equally.  *See* Am. Compl. 46-47, 60-62.  These same events were the basis for Munsif's complaint in his earlier federal court action.  Compl. 2-4, Civil No. 07-3805, ECF No. 3.[15]  Although the complaint in the earlier action did not parcel these events into distinct claims, after the defendants moved to dismiss the complaint, Munsif submitted a response which included fraud and gross

---

[15] Citations to pleadings and other filings in Munsif's prior federal lawsuit include the case number for the earlier action, Civil No. 07-3805.

negligence allegations substantially identical to those in the Amended Complaint in this action.[16]
*Compare* Pl.'s Part III Reply to Def.'s Reply to Initial Compl. 4-5, 8-11, Civil No. 07-3805, ECF No.
22, *with* Am. Compl. 46-47, 60-62.   Moreover, it is apparent from the Third Circuit's decision
affirming the dismissal of Munsif's earlier lawsuit that the Court of Appeals considered these
allegations and found them insufficient to state a claim for fraud or gross negligence.  *See Munsif*,
331 F. App'x at 956-59.  Because Munsif's fraud and gross negligence claims here are based on the
same events and allegations he raised in his earlier lawsuit, these claims are based on the same cause
of action as the earlier suit and are therefore barred by res judicata.

   In his proposed Second Amended Complaint, Munsif repeats essentially the same fraud and
gross negligence claims that appear in his Amended Complaint.   Although Munsif includes
additional details regarding some of the elements of his claims—for example, he specifies how he
was harmed by ABIM's alleged misrepresentations—the claims are based on substantially identical
allegations to those in the Amended Complaint, with one exception.  Munsif seeks to amend his
fraud claim to challenge ABIM's conduct in referring him to the Board of Medical Examiners for
evaluation of patient care and mental problems without medical grounds to do so.  Second Am.
Compl. 94.  This allegation, however, cannot form the basis for a common law fraud claim, as it
concerns a misrepresentation ABIM made to the Board of Medical Examiners (not Munsif), on
which the Board relied to Munsif's detriment.  *See Westwood-Booth v. Davy-Loewy Ltd.*, No. 97-

---

[16] In determining whether a lawsuit is based on the same cause of action as an earlier suit, a court is
not limited to the original complaint in the earlier lawsuit, but may consider "the actual issues
adjudicated" in the lawsuit.  *See Lubrizoil Corp.*, 929 F.2d at 963 (rejecting a plaintiff's argument
that the court should focus solely on the complaint in an earlier lawsuit to determine whether an issue
was part of the "cause of action" asserted in the earlier lawsuit, and instead focusing on "the actual
issues adjudicated" in the earlier action, which included issues raised as defenses).

7539, 1999 WL 219897, at \*4 (E.D. Pa. Apr. 13, 1999) ("A plaintiff cannot state a claim for fraud based on a third party's reliance on a misrepresentation, even when it was made to influence the third party foreseeably to act in a manner detrimental to the plaintiff.").  Because the only new allegation relevant to the fraud and gross negligence claims in Munsif's proposed Second Amended Complaint does not state a claim for fraud, this Court will not permit Munsif to amend those claims, as amendment would be futile.

In his earlier federal court action, Munsif complained of racial or ethnic discrimination by ABIM in its administration of the recertification exam to him and in the test questions themselves.  *See* Pl.'s Part III Reply to Def.'s Reply to Initial Compl. 5-8, Civil No. 07-3805, ECF No. 22; *Munsif*, 331 F. App'x at 956, 959.  Munsif repeats these same allegations in his Amended Complaint in this action, *see* Am. Compl. 47-49, and insofar as his discrimination claim in this action is based on the same allegations raised in his earlier lawsuit, the claim is barred by res judicata.  Munsif also adds a host of new discrimination allegations, purportedly in support of Title VII claims for discrimination based on race, color, religion, and national origin, and for retaliation, and a claim under the Age Discrimination in Employment Act (ADEA).  *See* Am. Compl. 49-60.  Most of these allegations pertain to alleged discrimination by the New Jersey Defendants and thus fail to state a discrimination claim against ABIM.  Even insofar as Munsif's Title VII and ADEA claims do purport to implicate ABIM, the claims must be dismissed because Munsif has never had an employment relationship with ABIM.  *See Shah v. Bank of Am.*, 346 F. App'x 831, 833 (3d Cir. 2009) (holding to establish a Title VII claim a plaintiff must prove the existence of an employment relationship with the defendant); *EEOC v. Zippo Mfg. Co.*, 713 F.2d 32, 33, 35 (3d Cir. 1983) (holding the ADEA only covers employees and applicants for employment).

27

In addition to raising new discrimination claims pursuant to Title VII and the ADEA in this action, Munsif also seeks to add a claim pursuant to the Americans with Disabilities Act (ADA) based on the inadequacy of ABIM's examination facilities to accommodate his diabetes.  Am. Compl. 57, 67.  Munsif alleges ABIM violated the ADA by failing to have any food available at the Lancaster, Pennsylvania, examination site to which he was assigned, and instead requiring examinees "to walk more than two furlongs uphill in sweltering heat to get a cup of coffee."  *Id.* at 57.  Although Munsif did not invoke the ADA in his earlier federal court action, he nevertheless raised the same complaint about the lack of food at the examination site.  *See* Compl. 4, Civil No. 07-3805, ECF No. 3 ("[E]ven though the abovementioned examination is a day-long examination, examination facilities at the Lancaster, Pennsylvania examination center were devoid of cafeteria, availability of snacks, beverages, etc. usually associated with examination sites.  Examinees had to walk in sweltering hot weather (about 85 degrees F) uphill about three blocks to get a cup of tea or coffee.").  The fact that Munsif now seeks to recover for this alleged wrong based on a different legal theory is immaterial.  Because Munsif's ADA claim is based not only on the same acts he complained of in the earlier action, but on material factual allegations virtually identical to those raised in his earlier complaint, the ADA claim is barred by res judicata and will be dismissed.  *See Elkadrawy*, 584 F.3d at 173-74 (holding res judicata barred a plaintiff's discrimination claims pursuant to 42 U.S.C. § 1981 where the plaintiff's Title VII claims based on a subset of the same facts and involving "fundamentally similar issues" had previously been dismissed).  Moreover, because the ADA allegations in Munsif's proposed Second Amended Complaint are not materially different from those in his Amended Complaint, leave to amend will be denied as to this claim.

Munsif's antitrust claim against ABIM in this action is based on allegations substantially

identical to allegations he raised in his earlier federal court action.  *Compare* Am. Compl. 62-67, *with* Pl.'s Part III Reply to Def.'s Reply to Initial Compl. 11-16, Civil No. 07-3805, ECF No. 22.[17] The antitrust claim is thus based on the same cause of action as the earlier lawsuit, and is barred by res judicata.  In his proposed Second Amended Complaint, Munsif again raises antitrust allegations substantially identical to those raised in his Amended Complaint and in his earlier federal court action.  Therefore, leave to amend will be denied as to Munsif's antitrust claim.

The RICO allegations in Munsif's Amended Complaint in this action are more detailed than in his earlier federal court action and concern not only ABIM but the New Jersey Defendants as well. Although many of Munsif's RICO allegations are duplicative of allegations raised and specifically rejected by the Third Circuit in the earlier action, *see Munsif*, 331 F. App'x at 958 & n.6 (holding Munsif failed to allege a plausible civil RICO claim because none of the racketeering acts alleged—all of which are realleged as predicate acts in this action—amounted to a crime), this Court need not determine the precise extent to which the RICO claim in this case is barred by res judicata because neither the Amended Complaint nor the proposed Second Amended Complaint alleges a plausible RICO claim for the reasons set forth in the preceding section.  Therefore, Munsif's RICO claim will be dismissed and leave to amend will be denied as to that claim.

In his Amended Complaint, Munsif also brings new claims for violations of the Illinois, New

---

[17] Although the complaint in the earlier action alluded to antitrust violations only in general terms, *see* Compl. 2, Civil Action No. 07-3805, ECF No. 3, Munsif explained the basis for his antitrust claim in more detail in his response to the ABIM defendants' motion to dismiss, *see* Pl.'s Part III Reply to Def.'s Reply to Initial Compl. 11-16, Civil Action No. 07-3805, ECF No. 22.  Moreover, it is apparent the Third Circuit considered these expanded allegations and found them insufficient to state a claim.  *See Munsif*, 331 F. App'x at 956, 959 (noting Munsif's allegations regarding ABIM's monopolization of the continuing medical education market by charging less than its competitors); *Lubrizoil Corp.*, 929 F.2d at 963 (suggesting the scope of the cause of action litigated in an earlier lawsuit depends on "the actual issues adjudicated" therein).

Jersey, and Pennsylvania whistleblower statutes; the United States, New Jersey, and Pennsylvania

Constitutions; the United Nations Universal Declaration of Human Rights; and the Pennsylvania

Medical Practice Act of 1985.[18]  Am. Compl. 33-36, 67-68.  Although these claims appear to relate

primarily to events after Munsif filed his earlier state court action—most notably, the investigation

of Munsif undertaken in New Jersey—and therefore do not appear to be barred by res judicata, they

are nevertheless legally insufficient.

Munsif's whistleblower claims are based on certain unspecified complaints he allegedly

raised "about harmful patient care practices and race-influenced policies of some parts of [the

University, the Consumer Affairs Division, the Law Division, the Board of Medical Examiners,

ABIM], and [the] American Board of Psychiatry and Neurology as per the section on facts."[19]  Am.

Compl. 67.  Insofar as these claims pertain to ABIM, it is not clear on which complaints the claims

are based or how ABIM violated the statutes.  In any event, ABIM cannot be liable under either the

Pennsylvania or the New Jersey whistleblower statute because Munsif is not (and has never been)

an employee of ABIM.[20]  *See Prutzman v. United Parcel Serv., Inc.*, No. 03-3877, 2003 WL

22351951, at *2 (E.D. Pa. Sept. 18, 2003) (noting it is well established the Pennsylvania

whistleblower statute "protects solely public employees from the acts of government officials");

---

[18] Munsif's claim for violations of § 45:1-18 of the New Jersey Statutes does not implicate ABIM. Am. Compl. 68-69.

[19] Although the facts section of the Amended Complaint describes complaints Munsif made to the Director of Consumer Affairs in 1997 or 1998 regarding problems resulting from the State's practice of granting medical licenses to physicians without United States internship or residency training, Am. Compl. 13-14, it is not clear what other complaints Munsif raised or to whom, apart from his filing of his federal court actions.

[20] It is not clear why the Illinois statute would apply to conduct by ABIM in Pennsylvania with respect to Munsif, a New Jersey resident.

*D'Annunzio v. Prudential Ins. Co. of Am.*, 927 A.2d 113, 120 (N.J. 2007) (holding New Jersey's whistleblower statute, the Conscientious Employee Protection Act, prohibits employers "from taking adverse employment action against any 'employee' who exposes an employer's criminal, fraudulent, or corrupt activities"). Munsif's proposed Second Amended Complaint does not correct any of these deficiencies; therefore, there is no reason to grant Munsif leave to amend this claim.

As to Munsif's federal constitutional claims, although it is not clear from the Amended Complaint the extent to which these claims are asserted against ABIM, they do not state a plausible claim for relief against ABIM. With the exception of Munsif's claim based on the Thirteenth Amendment, his constitutional claims against ABIM fail because there are no allegations from which it can be inferred that ABIM is a state actor, among other reasons. *See Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 278 (1993) (noting the only constitutional rights the Supreme Court has recognized as being protected against private, as well as official, encroachment are the Thirteenth Amendment right to be free from involuntary servitude and the right of interstate travel); *Edmonson v. Leesville Concrete Co., Inc.*, 500 U.S. 614, 619 (1991) ("With a few exceptions, such as the provisions of the Thirteenth Amendment, constitutional guarantees of individual liberty and equal protection do not apply to the actions of private entities."). Although state action is not required for a Thirteenth Amendment violation, Munsif's pleadings fall short of stating a claim for such a violation. The Thirteenth Amendment provides "[n]either slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist with the United States, or any place subject to their jurisdiction." U.S. Const. amend. XIII, § 1. Munsif alleges the Law Division and ABIM have violated his Thirteenth Amendment rights by "steering" him into lower paying, less prestigious hospitals in higher crime neighborhoods, rather than into

31

more desirable work environments.  Am. Compl. 34.  But such allegations fail to plausibly suggest

ABIM subjected Munsif to a "form[] of compulsory labor akin to African slavery" of a type the

Thirteenth Amendment was intended to cover.  *See Zavala v. Wal Mart Stores, Inc.*, No. 11-2381,

2012 WL 3217522, at *10 (3d Cir. Aug. 9, 2012) (quoting *United States v. Kozminski*, 487 U.S. 931,

942 (1988)).  Because the federal constitutional claims in Munsif's proposed Second Amended

Complaint suffer from the same deficiencies, leave to amend will be denied.

As to Munsif's claims under the New Jersey and Pennsylvania Constitutions, although his

Amended Complaint simply characterizes such violations as "too numerous to list at this time," Am.

Compl. 67, his proposed Second Amended Complaint provides additional detail.  Upon review,

however, this Court finds Munsif's proposed Second Amended Complaint fails to state a claim

against ABIM under either the New Jersey or the Pennsylvania Constitution.

Munsif's claims under the United Nations Universal Declaration of Human Rights and the

Pennsylvania Medical Practice Act of 1985 are likewise legally insufficient, as neither law provides

a private cause of action.  *See Sosa v. Alvarez-Machain*, 542 U.S. 692, 734 (2004) (noting the

Universal Declaration of Human Rights "does not of its own force impose obligations as a matter

of international law"); *United States v. Chatman*, 351 F. App'x 740, 741 (3d Cir. 2009)

(characterizing the Universal Declaration of Human Rights as "a non-binding declaration that

provides no private rights of action"); *State Farm Mut. Auto. Ins. Co. v. Midtown Med. Ctr. Inc.*, No.

02-7389, 2005 WL 627969, at *5 (E.D. Pa. Mar. 14, 2005) (holding the Pennsylvania Medical

Practice Act does not provide a private right of action).  Because Munsif's proposed Second

Amended Complaint does not (and cannot) correct this deficiency, leave to amend will be denied.

Finally, in his proposed Second Amended Complaint, Munsif alludes to the following

32

"claims" not included in his Amended Complaint:  selective prosecution, treason, failure to report elder abuse, violation of loss of privacy law, "[v]iolation of duty to inform of 'new policy' to plaintiff," attempted murder, violation of duty to hire competent witnesses, failure to know New Jersey/Pennsylvania law, failure to follow established procedures, failure to know federal law or consult with other lawyers, and failure to know facts.  Second Am. Compl. 77.  Upon review, this Court finds Munsif has failed to state a plausible claim for relief against ABIM under any of these theories.  As a result, granting Munsif leave to amend to assert these theories would be futile, and leave to amend is therefore denied.

**CONCLUSION**

For the reasons set forth above, this Court concludes Munsif has failed to state a civil RICO claim against any of the Defendants and the New Jersey Defendants are not subject to personal jurisdiction in Pennsylvania as to any of Munsif's remaining claims.  The Court also concludes Munsif's claims against ABIM are either barred by the doctrine of res judicata or fail to state a plausible claim for relief.  Accordingly, both the New Jersey Defendants' motion to dismiss and ABIM's motion to dismiss will be granted.  Because Munsif's proposed Second Amended Complaint fails to correct any of the deficiencies identified herein, the Court concludes further amendment would be futile, and leave to amend will therefore be denied.

An appropriate order follows.

BY THE COURT:


      /s/ Juan R. Sánchez
Juan R. Sánchez, J.

33